**PATIN ET ALS *vs.* PREJEAN ET ALS.**

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

The Code of Practice has re-enacted the same general rules, in relation to
the discussion of property by creditors, having a general mortgage on
the property of their debtors, as was provided by the act of 1817,
requiring them to proceed against the property last alienated, and
ascending towards that first sold, until their claims be satisfied.

A right or title, acquired under a contract, cannot be modified or affected
by any subsequent act of the legislature ; but the remedy or means given
by law, to enforce those rights, are always in the power of the legislature,
who may extend or restrict them, as circumstances may require.

The means by which a minor's rights, against the property of his tutor, are
to be enforced, are always in the power of the legislature. In requiring
him to discuss property last alienated, before coming on that previously
sold, although the law was enacted after his mortgage attached to the
property of his tutor, yet it was in the power of the legislature to pass it.

The plaintiffs allege, that they obtained a judgment
against their father and natural tutor, Marcel Patin, on the
10th day of September, 1825, for two thousand four hundred
and thirty-six dollars twelve cents, being eight hundred and
twelve dollars four cents, in favor of each of them, with legal
interest, on the claim or portion of each, from certain dates,
and with a legal mortgage on all their father's property,
which he owned and possessed, at any time since the 15th
day of July, 1812, the date of the natural tutorship.

In October, 1828, the syndics of Marcel Patin, who had
became insolvent, presented a tableau of distribution of his
estate, among his creditors, which was homologated,
on which the plaintiffs were placed, for the aggregate
sum of nine hundred and twenty-eight dollars sixty-nine and
three-fourth cents, leaving still a balance of two thousand and

forty-nine dollars, on said judgment, against their father, unpaid. They allege, they have made an amicable demand on the syndics, for the balance of their debt; who replied there was no more property or funds of said estate in their hands.

The plaintiffs further allege, that their said father was owner of a plantation, now in the possession of the widow Prejean and heirs of N. Thibodeau, which was alienated by him, in 1814; that he was owner of a negro man Harry, now in the possession of Martin Sudrique, who was sold by him, in 1823; and that he was owner of a negro woman Françoise, and her child, now in possession of Valery Martin, which he sold in August, 1823; all of which property, the plaintiffs charge to be subject to their legal mortgage, as having been alienated since the mortgage began to exist, and that it is liable to the payment of their respective claims. They pray that these parties be cited, to show cause why the said property shall not be seized and sold, to satisfy the balance of. the aforesaid judgment, with interest and costs.

*The defendant, widow Prejean,* and as tutrix of the minors Thibodeau, pleads a general denial; and alleges, that the plaintiffs are bound to prosecute their claim (if any they have) against the mortgaged property last sold, and ascending to that first sold; she alleges a sale of an undivided tract of land, by Marcel Patin, in November, 1819; and another tract, sold in November, 1820, all of which, together with the other property sued for, she prays may be first discussed and proceeded against, before coming against the plantation in her possession; she prays the court to fix the amount of the sum she is to pay, to carry on the discussion, and tenders it in open court.

*Sudrique* answered, reserving his right to dispute the plaintiffs' claim, and alleged, that the plaintiffs were bound to proceed against.the negro woman Françoise and her child, in the possession of Valery Martin, as being last sold, before coming on him.

*Martin* answered, and pleaded a general denial; he denied specially, that Marcel Patin was tutor of plaintiffs, or that

any mortgage existed on the property in his possession; he
denies that the plaintiffs are entitled to any thing, as heirs of
their mother; that after the death of their mother, the
community which had previously existed between her and
their father, *was continued*, and was administered by the
father, for the benefit of all the parties concerned; that
during its continuance, debts were contracted, and property
purchased, in the name of the father; that among the debts
contracted, there was one in favor of the Louisiana State
Bank, one in favor of M. White, and one in favor of F.
Breaux, on which judgments were obtained and executions
issued, and on the 28th of August, 1823, a negro girl named
Françoise, and her child, were seized and sold, when the
defendant became the purchaser, for five hundred and thirty-
five dollars, subject to the payment of two hundred and five
dollars, with interest, and a special mortgage in favor of A.
Guidry, which he has paid; he further alleges, that the
property so purchased by the said Marcel Patin, was acquired
by him, subsequent to the death of the plaintiffs' mother, and
was liable to the payment of said debts; and that the plaintiffs
have received from their father, various articles of property,
for which they have given no credit; that the community
of property continued, until after the purchase of the negro
woman and her child; and which was sold as community
property to pay community debts, for the payment of which
the plaintiffs were also bound.  He prays that the plaintiffs'
petition be dismissed, &c.

On these issues the cause was tried at the April term,
1832, of the St. Martin's District Court.  The plaintiffs pro-
duced in evidence, the judgment in the Probate Court,
against their father, in which they recovered the amount now
claimed, after deducting a small credit.

The defendants introduced in evidence, two acts of sale,
made of two tracts of land, in 1819 and 1820, which were
required to be discussed, in the answer of the widow Prejean,
before proceeding against her.

The district judge being of opinion, the plaintiffs were
entitled to the amount of the judgment claimed, in their

petition, against the defendants, Sudrique and Martin, and that they were bound to discuss the property in their possession before coming against the property of the other defendants, ordered, that the negro woman and her child, in the possession of Martin, and the negro man Harry, in possession of Sudrique, be seized and sold, to satisfy the plaintiffs' demand, and that the cause be continued as to the other defendants.

The sheriff returned an account of sales, of the slaves ordered to be seized and sold, by which it appeared they sold for seven hundred and forty dollars, still leaving a large balance of plaintiffs' judgment unsatisfied.

At the November term, 1833, of said court, the trial of this cause proceeded. Judgment was rendered on the evidence already introduced, when it was ordered and decreed, that the proceedings against the property, in the possession of the widow Prejean, be suspended, until the plaintiffs have discussed the two tracts of land, sold in 1819 and 1820, by the plaintiffs' father, and now in the hands of third possessors; and that the defendant, widow Prejean, pay into court the sum of seventy-five dollars, within thirty days from the date of the decree, to defray the expenses of the discussion, and on failure, to be forever barred from requiring or setting up said discussion. From this decree the plaintiffs appealed.

*Simon,* for the plaintiffs.

*Brownson, contra.*

*Martin J.,* delivered the opinion of the court.

The plaintiffs seek to obtain payment of a judgment, which they have obtained against their late tutor, by the sale of a tract of land, sold by him. The attempt is refuted by the defendants, who point out another tract, sold by the tutor, after he had sold that in the possession of the defendants. The plaintiffs contended, that as their tutor had sold the tract, in the possession of the defendants, before the year

1817, the latter could not avail themselves of the act passed in that year, which requires creditors, with a general mortgage, to seize at first the land last sold by their debtors. The plea of discussion was sustained, and the plaintiffs appealed.

It is contended in this court, that the act of 1817, invoked by the defendants, established a rule of practice, and is consequently repealed by the Code of Practice, and that if it be not repealed, the defendants cannot avail themselves of it, because their ancestor purchased the land, before the passage of the act.

The Code of Practice, 715, provides that, in regard to sales under a *fieri facias*, the purchaser against whom a suit is commenced by a creditor, having a legal or judicial mortgage on the property of the debtor sued, may require the creditor to discuss the other property, in the possession of the debtor, before coming on that which he has in his possession; and even that which the debtor has alienated since the purchase.

Had the legislator gone no farther, it might be urged on the one side, that he intended only a special provision, confined to the cases of purchases at a sheriff's sale, and on the other side, that it being difficult to discover, why a different rule should be established, in regard to such sales, it might be safely concluded, that the reason evidently extending to every sale, all should be regulated in the same manner.

But the legislator proceeds, and gives us the grounds on which he acts, "because the creditor who has a general mortgage, can only act against the property, which his debtor has disposed of, in the order in which the alienations have taken place, beginning at the most recent, and ascending to the most ancient."

If the rule of practice, in this respect, established by the act of 1817, and invoked by the defendants, was repealed as a rule anterior to the Code of Practice, still the principle is recognised and incorporated in that Code, that the creditor, with a general mortgage, must proceed against the property alienated by the debtor, by beginning at that most recently

*Margin notes:*

WESTERN DIST.
*September*, 1834

PATIN ET ALS.
*vs.*
PREJEAN ET ALS.

The Code of Practice has re-enacted the same general rules in relation to the discussion of property by creditors having a general mortgage on the property of their debtors, as was provided by the act of 1817, requiring them to proceed against the property last alienated and ascending towards that first sold, until their claims be satisfied.

39

WESTERN DIST. disposed of, and ascending towards that first alienated, until
September, 1834. his claim be satisfied.

PATIN ET ALS.        It remains for us to examine, whether purchasers, before
         vs.
PREJEAN ET ALS. the act of 1817, may avail themselves of a legal provision,
A right or title enacted since the perfection of the contract, under which the
acquired under a land was acquired.
contract, cannot
be modified or     It cannot be doubted, that the title or rights, acquired under
affected by any
subsequent act of a contract, cannot be modified or affected by any subsequent
the legislature;
but the remedy act of the legislature ; but the means of enforcing such rights,
or means given and protecting such titles, in other words, the remedy provi-
by law to enforce
those rights, are ded by law, to insure the enjoyments of such rights and
always in the titles, is always in the power of the legislature, who may
power of the le-
gislature, who extend or restrict it, as circumstances may require.
may extend or
restrict them as   The lien on the land of the tutor, which results from the
circumstances
may require.    trust committed to the tutor, cannot be destroyed or modified,
The means by without a correspondent destruction or modification of the
which a minor's
rights against the minor's rights ; but the means by which the minor's rights
property of his may be enforced, his remedy is always within the power of
tutor are to be
enforced, are al- the legislature.   In requiring him to proceed against the
ways in the pow-
er of the legis- property, most recently alienated by the tutor, the minor's
lature.   In re- rights or lien in the rest, is not destroyed or modified.  Some
quiring him to·
discuss property delay, indeed, is thereby created ; but every citizen who is
last alienated be-
fore coming on obliged to resort to the court, to enforce his rights, must
that previously submit to the forms and delays which the law has prescribed,
sold, although
the law was en- or may from time to time prescribe.
acted after his
mortgage attach-   At the passage of the act of 1817, the minors would have
ed to the proper-
ty of his tutor, been bound to seize first the tract of land which they are
yet it was in the now called on to discuss, because then it was in the posses-
power of the le-
gislature to pass sion of their tutor. That act, in requiring them to discuss the
it.                same tract after a sale, did not put them on *duriore casu.*

It does not appear to us, that the District Court erred.


It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.